Well, actually I would contend that this case is even easier to decide simply because there is an alternative basis for relief, which is that when there are changed circumstances, that there are no numerical or time limitations to file a motion to reopen, this was presented to the BIA both in terms of the changed country conditions that have been occurring in Mexico, in addition changed circumstances defined by regulation as turning 21. Mario turned 21 in August 2004. He filed this motion to reopen in March 2005. The BIA never reached this issue. In its footnote at page 3 in the government's brief, it concedes that remand is proper for the BIA to consider this claim in the first instance. We agree with that and believe that remand would be the proper remedy here. We would contend that the only question is what is the proper remedy. And we see two possibilities. The first would be to request, we would request an order directing the BIA to consider the merits of Mario's changed circumstances claim with express instructions to go to the merits and not rely on any procedural default. Given that there was a boilerplate decision issued in Mario's case, we would underscore the importance of having clear and express instructions by the court. The changed circumstances, my understanding is, has at least an implicit time limit, which is to file within either 90 days or a reasonable period from the changed circumstances. Right? Right. So here you're telling us that he turned 21, certainly a lot more than 90 days before he filed, and that there doesn't seem to be anything to indicate that the changed circumstances changed. I understand it may have changed after the last hearing, but not timely with regard to when he actually filed. Reasonable period hasn't been defined by the BIA. Arguably six months could fall within that. More important on the actual country condition reports, beginning in January, February, and March of 2005, which were the three months preceding, the months and weeks preceding Mario's claim, the State Department issued travel advisories warning American citizens not to travel to Mexico. This is what we contend to be the changed circumstances are, because his claim is based on the contention that he was mistaken as a U.S. citizen when he was in Mexico. Relevance, if any, I guess we explored this issue just before, but if we thought that this asylum claim had no chance of succeeding, would that be relevant to our decision at this point? Well, the BIA needs to decide that. I mean, we have 300 pages of country condition reports. It's a basis on race. He was called a Gavacho. He was based on nationality. He was called a gringo, and a particular social group. The Ninth Circuit law has changed drastically in the five years since that was decided, but we would very much contend that this has a viable claim. I mean, this isn't in the record, but I mean, just a couple weeks ago, colleges are warning its students not to go to Mexico over spring break because of the danger that they will be in. On the record itself, in the six months preceding the filing of this motion, a U.S. citizen was filed or a U.S. citizen was killed 27 times in six months, which is more than one a month. Given that Mario encountered those problems when he was 11 years old and that the situation has only become drastically worse, it's quite a viable claim that we would contend needs to have the benefit of a full and fair hearing. Okay. Are there further questions? Not at the moment. If not, I'll reserve time. Okay. May it please the Court? As noted by counsel, we have attempted to remand the case based on the board's failure to address the changed circumstances determination. That's right. And it was denied, and therefore we went to briefing, and we have no issue. Denied by the court? By the court, correct. All right. Well, petitioners opposed the remand. And now, I mean, we understand definitely that the board needs to address the changed circumstances in there. And basically, if you have any questions for me, otherwise we'd be happy to submit. It's probably less a question than an observation, and I don't know that you're going to be in any position today to say anything. But this case was a subject of a published opinion of our court once before. Correct. That explicitly decried the injustice and couldn't figure out why the government was possibly pursuing this case and justified the resources. We're here years later. There are a lot more resources. And I get asked a lot about how I feel about being a judge and so on and so forth. One of the things I often observe is that almost always we're able to do what we think is the right thing. Sometimes the law points in a different direction. We understand that. And then there are a handful of cases that stand out. And in my first now nearly seven years on the bench, the one that previously stood out the most was a case much like this, and it was cited. And you've probably seen it in the news. Indeed, by coincidence, Judge Berzon was on the panel with me for that case. And I've talked about that case a lot when I talk to law schools and so forth. And here I am several years later seeing a case which, if anything, seems slightly worse than that one. I have a very difficult time. And certainly the government doesn't have to justify to us why the prosecutorial discretion is exercised in the way it was. But if only to try to sleep better at night, because I see what's going to happen in this case. I mean, it will be sent back to the board. But the prospect of the board granting asylum because of conditions in Mexico, let's just say that's a bet I'm not likely to take. And so if we see, after the process grinds out for another year or so, this person being served with an order of removal, and I've got to say it just makes no sense to me whatsoever. Oh, and I concur. I mean, I'm a spokesman for the government, but at the same time I have no control over agency action nor the use of their discretion. All I can ask you to do is convey to your client, I guess in this case it's DHS or somebody at DHS, the reaction of the judges, separate and apart from what we will do in the form of a formal disposition, that this appears to us, from what we know, to be both an incredible waste of resources, and since this is tax week I'm conscious of paying those taxes and not wanting to waste those resources. Heaven knows those agencies are overburdened. The immigration officials have problems. This seems to be an unlikely place to benefit the country by applying and spending those resources. And the bottom line is about as unjust as I can imagine. So I don't know. I mean, I take it your predecessors in this case probably communicated something similar after the first Ninth Circuit decision, and here we are again. So I'm not going to hold my breath, but, boy, if ever a case called out for prosecutorial discretion this certainly seems to. I have a question in that regard because it's something that's troubled me in general with regard to prosecutorial discretion. How do you understand your client to be, DHS or BIS or the board? They technically are both separate clients. They're both our clients. We have two clients. Both of them are clients. I've asked different people at different times and gotten different members of your organization. Based on my experience you're both. And there seems to be some confusion about who your client is. It just matters because if you're going to go back for prosecutorial discretion you have to know where you're going. Yes. But, no, as far as I'm aware and as I operate on a personal need being the single attorney I am in the massive conglomerate, but I look at it because DHS represents the government throughout the proceedings and then all the way up to the board. So I have to be accountable when I speak to you. I have to be accountable for not only the actions of my one client, DHS, but also for the agency's determination. But that's my understanding. The board doesn't have official discretion. So this plea, I guess, is the one aimed at whoever might have discretion. Yes. Whoever might make a judgment about this that maybe this one could be put away. I'll have somebody find him in a dark room. It will be fine. The other thing we're told sometimes, which is not a good thing to tell judges, at least I don't think it is, is we want the order approved and then we'll exercise our discretion, which is now wasting our time. Oh, yes. Actually. For the record, since I wasn't on the former case with Judge Clifton and Judge Berzon, I joined strongly in Judge Clifton's remarks. You should say that to your department. And I will report that. And I thank you again for your time. Thank you very much. In light of the Court's comments, we would not object to an order of mediation. If the Court feels it appropriate for these cases to be resolved through mediation, we would welcome that opportunity greatly. Thank you very much. And I repeat that this was an unusually, despite the circumstances, a satisfying argument in an immigration case. Thank you very much. Both of you. Thank you. The case of Mantiello v. Holder is submitted.
judges: D.W. Nelson, Berzon, Clifton